Judge Green,
delivered the following opinion, in which the other Judges concurred. *
Jedediah Turner devised his land, supposed to contain 400 acres, to his sister Susanna Turner, upon condition, *405 that, within a limited time, she should pay one-third of its value to the children of his sister Folly Atkinson, and one-third to the children of his sister Sally Blackwell. But, if she failed to pay as aforesaid, then the land was to be sold, and the money divided, between Susanna, and flu; children of his other two sisters. Susanna elected to take the land, and pay for it according to the will. Sally Blackwell was appointed guardian of all her children, who were, and still are, infants. The land was valued, and Susanna paid to the children of Mrs. Atkinson what they were entitled to. Blackwell, the husband of Sally, being dead, and indebted to Susanna Turner, as executrix of Jedediah Turner, it was agreed between Susanna Turner, then Bowles, and Mrs. Blackwell, that the said debt should be discounted against the sum due to the children of the latter, on account of the land; and that M rs. Blackwell should take, in full of the residue due to her children, 110 acres of the land which had belonged to the testator. In pursuance of this agreement, Mrs. Blackwell gave to Susanna, a receipt in full of the sum due to her children, and the latter gave to the former her bond to convey the said 110 acres to her when required. This bond does not speak of Mrs. Blackwell as the guardian of her children, hut is given to her individually. Mrs. Blackwell was put into possession of the land. The appellee being very desirous to procure this land, and anxious to conceal his wish, employed Austin Thacker to purchase it from Mrs. Blackwell, for him. Thacker, accordingly, treated and agreed with her for the purchase; but, before any writings were signed by the parties, Mrs. Turner informed Thacker, in the presence of Mrs. Blackwell, that she had given the land in satisfaction of the sum, which she owed to Mrs. Blackwell’s children; and insisted, moreover, that the land belonged to the children, and that it had been intended for them. Mrs. Blackwell admitted, that it was taken in satisfaction of what was due to her children, but insisted that she had a right to sell it. *406 Mrs. Turner also objected, that it was probable .that the jan(j would. not hold out 400 acres; and, if so, that the 110 acres would be more than ought to have been given, for satisfaction of the children’s claim; and that the 110 acres, being assigned for that purpose, upon the supposition, that the whole tract contained 400 acres, if it fell short, there ought to be a rateable deduction. It was thereupon agreed between Mrs. Turner, Mrs. Blackwell, and Thacker, that a survey should be made, and the 110 acres be added to, or taken from, in the event of the whole tract containing more or less, in the proportion that 110 acres bears to 400: that Thacker should secure to Mrs.. Blackwell the payment of the purchase money, in instalments; and that Mrs. Blackwell should convey the land to him. An agreement to this effect was signed by all the parties; which agreement wás assigned within a few days to the appellee. Mrs. Turner and Mrs. Blackwell refusing to carry this contract into effect, Street filed his bill against them, and the children of Mrs. Atkinson and of Mrs. Blackwell, claiming the specific execution of the contract. Mrs. Turner and Mrs. Blackwell resisted this claim, upon the ground, that the land belonged to the children of the latter, and that they had been over-reached in the contract. The Court of Chancery decreed a specific execution of the contract; and the defendants appealed.
Mrs. Blackwell took this land, in satisfaction of her children’s claim, at 25 or 27 shillings per acre ; the valuation, at which the commissioners, in pursuance of Turner’s will, had valued it. She sold it to Thacker, at % 6 25, per acre, and pending the suit, it is proved to be worth from $7 to $10 per acre. If, therefore, the children of Mrs. Blackwell had an equitable right to the land, or to the money proceeding from the sale to Thacker, and could assert their claim to the one or the other; at their election, no Court of Equity should have deprived them of that right, unless it appeared to be manifestly for their advantage, to confirm the sale; in which case, a Court of Equity *407 could elect for them, and bind them by such election. 1 Fonb. Equ. 88, note f and the cases there cited; 3 Johnson’s Ch. Cas. 190. The infant children of Mrs. Blackwell had such right. The property was purchased by their guardian and trustee, exclusively with a fund belonging to them; and both Mrs. Turner and Mrs. Blakwell affirm, that it was purchased for thorn, or ral her taken as theirs, in lieu of the money due to them. These facts were distinctly known to Thacker, the acknowledged agent of Street, before he purchased for the latter, it was affirmed by Mrs. Turner; and, although Mrs. Blackwell insisted on her right to sell, she admitted that she had taken the land, in lieu of the money due to her children ; and the very terms of the contract, signed by Thacker, shew clearly that the land was taken, as the due proportion of the children, according to their interest in the whole tract of land. If, under these circumstances, Mrs. Turner had conveyed to Mrs. Blackwell, and she to Street, the latter would have been a trustee for the children of Mrs. Blackwell. The statute of frauds in England requires, that all trusts shall he declared in writing, except such as arise by implication of law, which are thereby left as at common law. By the common law, resulting-trusts might be raised and supported by parol proofs. It was at one time doubted, whether, notwithstanding the exception of resulting trusts out of the English statute, it was not required by the general spirit of the statute, that resulting trusts, if denied, should be established by written evidence, and not by parol proofs. But, the better opinion seems to he, that even under the English statute, a resulting trust may be raised by parol proofs. It was, however, never doubted, that a resulting trust, confessed by the trustee, was valid. 2 Fonb. Equ. Book 2, chap. 5, and notes; Bac. Abr. Trust, C. passim; Foster v. Colvin, 3 Johns. Rep. 216. This provision of the English statute of-frauds, has not been, adopted into our Code. With us, the doctrine of resulting trusts remains as at com *408 mon law. This, however, is not material in this ease, gjnce; even according to the English cases, there would be, in this case, a trust for the children, even if the land bad been conveyed as aforesaid. If a man purchase land, and cause it to be conveyed to.another, there is a resulting trust raised, by operation of law, for the purchaser; and, if a trustee purchase property with the trust funds, there is a resulting trust for the cestui que trust; so that he may either claim the beneficial right to the property, or, at his election, claim a lien upon the property, for the security of his money invested in it. In such cases, the purchaser, even of the legal estate, much more so of a mere equity, from the trustee, with notice of the trust, stands in the shoes of the trustee. See the books before cited. This last mentioned case is precisely the case at bar. The proofs in the cause indicate, that it is against the interest of the infants, to carry the contract in question into specific execution. But, this may be otherwise. The proper course was, to refer it to a commissioner to enquire and report, whether it would be for the interest of the infants to confirm the sale, or otherwise. The decree should, therefore, be reversed, and the cause remanded for further proceedings to be had therein, in conformity to the foregoing views.

 Judge Brooke, absent.